**IT IS ORDERED as set forth below:**

**Date: May 9, 2019**

_Wendy L. Hagenau_
_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 19-50585-WLH |
| JANEENE HOPE VICKERS MOORE-MCKINNEY. | CHAPTER 13 |
| Debtor. | |

## <u>ORDER ON DEBTOR'S OBJECTION TO PROOF OF CLAIM</u>

**THIS MATTER** is before the Court on the Debtor's Objection to Claim of Anthony B.

Moore (Doc. No. 26).  The Court held a hearing on the Objection on April 2, 2019, after which

it took the matter under advisement.

1

## I.    FACTS

Mr. Moore is the Debtor's former spouse as well as a child support creditor in this case. The parties have an extensive history of litigation in both state court and this Court. Debtor filed this case on January 11, 2019. This is the Debtor's second chapter 13 bankruptcy case.

Debtor previously filed case number 16-57172 on April 25, 2016. After obtaining relief from the automatic stay, Mr. Moore obtained a judgment in the Douglas County Superior Court on July 11, 2016 for child support arrears, reimbursement of medical expenses, and various fees. Mr. Moore filed a proof of claim regarding the domestic support obligation of the Debtor to Mr. Moore. After hearing and based on a state court order in existence at the time, the Court allowed Mr. Moore a priority unsecured claim in the amount of $18,971.84. Order on Motion to Disallow Claim (Doc. No. 70.), entered on October 14, 2016.

Mr. Moore appealed the state court order. After a remand, the state court entered an Order After Second Remand on May 17, 2018, in which it recalculated the amounts due and increased the amount of Mr. Moore's claim. Mr. Moore filed an amended proof of claim and, after notice and hearing, the Court modified its prior order and allowed Mr. Moore an unsecured priority claim in the amount of $24,159.61. The claim consisted of the following:

| | |
|---|---|
| Child Support Arrears | $4,347.00 |
| Uninsured Health Care Expenses | $5,749.55 |
| Attorney's Fee | $15,571.50 |
| Amount Paid by Debtor | ($1,508.44) |
| TOTAL | $24,159.61 |

Order Allowing Modified Claim (Doc. No. 102) entered July 19, 2018.

Debtor was unable to propose a workable plan modification to pay Mr. Moore's modified claim. The Chapter 13 Trustee filed a motion to dismiss the case, and the case was dismissed on September 26, 2018.

Mr. Moore then returned to state court and filed an Amended Motion for Contempt on November 20, 2018 requesting interest on his domestic support claim pursuant to O.C.G.A. § 7-4-12.  The state court held a hearing on Mr. Moore's amended motion for contempt on January 15, 2019, after the Debtor filed this case.  The state court issued an order on January 18, 2019.  The order made several observations but left it to this Court to determine Mr. Moore's claim.

Mr. Moore filed a proof of claim for the domestic support obligation owed by the Debtor to him in this case.  He amended his claim several times to add and adjust interest he alleges is owed on the claim.  Mr. Moore filed his original proof of claim number 1 on January 23, 2019 for $16,205.26.  He then filed claim no. a1 on January 25, 2019 for $17,039.87; claim no. a2 on January 30, 2019 for $21,939.60; claim no. a3 on February 6, 2019 for $22,518.40; and claim no. a4 on February 28, 2019 for $26,124.33.  Mr. Moore seeks interest at the rate of 6.25% for 2015 – 2018 in the amount of $5,399.28.

The Debtor objects to Mr. Moore's claim.  She contends Mr. Moore's claim should be reduced to reflect the amount of his claim allowed in the Debtor's previous case ($24,159.61) less the amount the Debtor paid on the claim in her prior case ($6,994.74) to reflect a balance of $17,164.87.  Debtor contends Mr. Moore is not entitled to interest on his claim and, if allowed, the interest should not be entitled to priority status but be a general unsecured claim. Debtor argues Mr. Moore is estopped from seeking interest now since he did not seek it in Debtor's prior case.  Debtor also argues the portion of the claim for attorney's fees should not be entitled to priority.

The Court held a hearing on the objection on April 2, 2019.  Counsel for the Debtor, David Casey, Mr. Moore, and counsel for the Chapter 13 Trustee, Ryan Williams, were present.

After considering the argument of counsel and Mr. Moore, the Court found Mr. Moore is entitled to both pre- and post-petition interest and the interest is to be treated as a priority debt and that the attorney's fees are entitled to priority treatment. The Court took the precise calculation of Mr. Moore's claim under advisement and ordered the parties to submit revised calculations of the interest owed, accounting for the payments made by the Debtor before and during her prior case.

Mr. Moore filed a calculation on April 8, 2019 (Doc. No. 45). On April 10, 2019, Debtor submitted her calculation (Doc. No. 46). The Chapter 13 Trustee filed a report on April 11, 2019 (Doc. No. 47). The Court entered an order on April 17, 2019 (Doc. No. 52) providing further direction for the calculation of the claim. The parties filed a Joint Stipulation pursuant to the Court's order calculating Mr. Moore's pre-petition claim to be $22,104.00 (Doc. No. 54). After the Court requested the parties divide the claim between principal and interest, Mr. Moore filed a second revision of the calculation of his claim (Doc. No. 55) rejecting the stipulation and proposing his calculation of principal and interest. Debtor responded (Doc. No. 56) with a different proposal.

## II.    ANALYSIS

The Objection and responses raise several issues: 1) is Mr. Moore entitled to pre-petition interest; 2) did Mr. Moore waive his interest claim by not raising it in the Debtor's prior case; 3) is Mr. Moore entitled to post-petition interest; 4) if he is entitled to interest, what interest rate applies; 5) is Mr. Moore entitled to a priority claim for attorney's fees; 6) what is the basis for the charges of $175 and $320 included in Mr. Moore's claim; and 7) what is the principal and interest due on the judgment as of the petition date (i.e. Mr. Moore's claim)? The Court considers each of these in turn.

4

### a.  Mr. Moore is Entitled to Pre-Petition Interest

Mr. Moore is entitled to pre-petition interest on his domestic support obligation and the interest is entitled to priority status.

The state court order issued on January 18, 2019 discusses interest, but it did not award Mr. Moore interest.  Rather, the state court acknowledged it was "aware" that Georgia law provides all judgments in Georgia shall bear annual interest.  It noted that Mr. Moore "did not specify the amount of interest accrued thus far, however, it does appear that he is entitled to collect interest on his judgment claim which is something that he can take up with the bankruptcy court when he files his claim under her chapter 13 plan."  The state court therefore left the question of interest open for this Court to consider.

The Bankruptcy Code provides for interest on DSO claims.  Section 101(14A) defines a "domestic support obligation" ("DSO") as:

> a debt that accrues before, on, or after the date of the order for relief in a case under this title, **including interest** that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> > **(A)** owed to or recoverable by—
> >
> > > **(i)** a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> > >
> > > **(ii)** a governmental unit;
> >
> > **(B)** in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> >
> > **(C)** established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
> >
> > > **(i)** a separation agreement, divorce decree, or property settlement agreement;
> > >
> > > **(ii)** an order of a court of record; or

5

> **(iii)** a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> **(D)** not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A) (emphasis added). A DSO, as the Bankruptcy Code now defines the term, includes not only a child support arrearage but also interest accruing on the arrearage under applicable nonbankruptcy law. *See* In re Resendiz, No. 12-10603, 2013 WL 6152921, at *2-3 (Bankr. S.D. Tex. Nov. 20, 2013) (explaining an allowed unsecured DSO claim is entitled to first priority payment through a chapter 13 plan and should be paid with interest).

The interest that accrues on a prepetition debt in the nature of alimony, maintenance or support shares the nondischargeable character of the debt and becomes part of the DSO itself.[1] The interest and principal are intertwined and inseparable, and enforcement of the interest carries the same weight as enforcement of the principal. In re Randall, No. 17-33322-HDH13, 2018 WL 1737620, at *2 (Bankr. N.D. Tex. Apr. 10, 2018); *see also* In re Wright, 438 B.R. 550, 552–53 (Bankr.M.D.N.C.2010) (holding that interest on past-due child support is a domestic support obligation).

### b. Mr. Moore is Entitled to Post-Petition Interest

Mr. Moore is entitled to post-petition interest. The plain language of section 101(14A) defines a DSO to include interest accruing under applicable nonbankruptcy law. In re Resendiz, No. 12-10603, 2013 WL 6152921, at *3 (Bankr. S.D. Tex. Nov. 20, 2013); In re Lightfoot, No. 13-32970-114, 2015 WL 3956211, at * (Bankr. S.D. Tex. June 22, 2015). The definition encompasses debts that were considered alimony, maintenance or support under prior

---

[1] This was true even under pre-BAPCPA law. As explained below, section 101(14A) enlarged the concept to define post-petition interest as part of the DSO claim itself.

section 523(a)(5), but it is broader in several respects.  It includes both pre-petition and post-petition obligations, and it includes interest that accrues on a debt under applicable nonbankruptcy law, including interest that accrues on or after the date of the order for relief, "notwithstanding any other provision of this title."  Section 101(14A) enlarged the concept of a domestic support obligation to define post-petition interest as part of the DSO claim itself. The Bankruptcy Code therefore not only *allows* but *requires* Chapter 13 plans to provide for payment of post-petition interest on DSO claims.  Lightfoot, 2015 WL 3956211 at *3.  This is true despite other provisions of the Bankruptcy Code.  Id.

Section 502(b)(2) disallows any claim for unmatured interest generally and section 502(b)(5) disallows claims for unmatured DSOs.  But section 101(14A) expressly includes interest in the definition of DSO "notwithstanding any other provision" of the Code.  Lightfoot, 2015 WL 3956211 at *4.  The language "notwithstanding any other provision of this title" in section 101(14A) is contained within the clause referring specifically to DSO interest.  The explicit inclusion of interest in the definition of DSO saves DSO interest from disallowance. *See* Lightfoot, 2015 WL 3956211 at *4.

Post-petition interest as it accrues on a DSO becomes part of the DSO debt itself under § 101(14A) and the accruing post-petition interest is a priority debt that must be paid in full through the confirmed plan consistent with § 1322(a)(2).  Because a debtor must provide for the full payment of all claims entitled to priority under section 507, unless the holder of the claim agrees to a different treatment, and because all claims entitled to priority under 11 U.S.C. § 507 must be paid in full pursuant to 11 U.S.C. § 1322(a)(2), a chapter 13 plan must provide for payment of interest, including post-petition interest, accruing pursuant to nonbankruptcy

law on any claims for domestic support obligations.  In re Resendiz, No. 12-10603, 2013 WL 6152921, at *4 (Bankr. S.D. Tex. Nov. 20, 2013).

Further, chapter 13 debtors must pay post-petition interest on DSO claims despite section 1322(b)(10).  Section 1322(b)(10), as amended by BAPCPA, states that a chapter 13 plan may "provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under § 1328(a)" but only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims.  11 U.S.C. § 1322(b)(10).  There is no reference to or exception for DSOs in section 1322(b)(10).  This new section could be interpreted to preclude the payment of post-petition interest on account of a nondischargeable DSO debt unless the chapter 13 plan provides full payment of all allowed claims.

But the predicate to § 1322(b) is that all of its subsections are "subject to subsection[] (a)."  11 U.S.C. § 1322(b).  It is subparagraph (2) in "subsection[ ] (a)" that mandates that a chapter 13 plan provide for full payment of all claims entitled to priority under § 507.  Paying post-petition interest as part of a DSO claim under § 101(14A) is therefore required by § 1322(a)(2) and an exception to the general rule in § 1322(b)(10) that post-petition interest can be paid on account of a nondischargeable debt only if the chapter 13 debtor has disposable income sufficient to pay all allowed claims in full.

Other provisions of the Bankruptcy Code support this conclusion.  To get a discharge, chapter 13 debtors must certify that all DSOs due during the Chapter 13 case, including amounts due before the petition to the extent provided for by the plan, have been paid.  11 U.S.C. § 1328(a).  This certification requirement means that DSOs accruing before *and* after the chapter 13 petition have to be current at the time of certification.  "Amounts payable" for

8

purposes of the new certification in § 1328(a) also includes interest on a DSO accruing after the petition, which underscores that chapter 13 debtors have to pay accruing post-petition interest through the chapter 13 plan.

Debtors can separately classify a DSO, including all interest that accrues under nonbankruptcy law after the petition, for payment in full.  For example, in <u>In re Resendiz</u>, No. 12-10603, 2013 WL 6152921 (Bankr. S.D. Tex. Nov. 20, 2013), the debtor proposed a chapter 13 plan that provided a 5% dividend to the general unsecured class and included a child support arrearage claim in the amount of $10,973.13, to be paid at 6% interest.  The chapter 13 trustee did not recommend confirmation because, pursuant to 11 U.S.C. § 1322(b)(10), in order to pay interest on a non-dischargeable unsecured claim the debtor must propose a 100% repayment plan.  The general unsecured class in the plan totaled $195,210.33, and a 100% repayment plan was not feasible.  The court found, notwithstanding 1322(b)(10), the plan had to provide for the payment of any interest accruing pursuant to nonbankruptcy law on DSO claims and the debtor acted in good faith and proposed a plan that was confirmable.  The court also noted a fresh start is the ultimate goal for any debtor in bankruptcy and, if the debtor completed his chapter 13 plan but still owed interest on child support arrearage (a claim that could result in jail time), he would not receive a fresh start.

Interest, as it "matures" after the petition on a DSO debt, becomes part of the DSO debt itself under § 101(14A) "notwithstanding" any other provision of the Bankruptcy Code.  Accordingly, post-petition interest on Mr. Moore's DSO claim is allowed and Debtor's plan must provide for the payment of interest accruing pursuant to nonbankruptcy law on his claim.

9

### c. Mr. Moore did Not Waive His Interest Claim by Not Raising It in Debtor's Prior Case

Mr. Moore did not seek interest in the Debtor's prior chapter 13 case, but he is entitled to both pre- and post-petition interest on his DSO claim and he may seek it in this case.

The Bankruptcy Code provides interest on DSOs accrues automatically and is non dischargeable, and a creditor may pursue interest on a DSO claim even after the debtor completes her chapter 13 plan. Once confirmed, the treatment and payment of the domestic support obligation under the plan is res judicata, as long as due process was satisfied. Lynne F. Riley, Bapcpa at Ten: Enhanced Domestic Creditor Protections and Enforcement Rights, 90 Am. Bankr. L.J. 267, 284 (2016) (citing United Student Aid Funds Inc. v. Espinosa, 559 U.S. 260 (2010)). Nonetheless, the amount not paid, plus accruing interest under nonbankruptcy law, remains a nondischargeable debt and the debtor is not absolved of his duty to pay this balance in full once the bankruptcy case is over. In re Hutchens, 480 B.R. 374, 382-83 (Bankr. M.D. Fla. 2012); *see also* In re Kreps, 2011 Bankr. LEXIS 2690, 2011 WL 2749584, at *2 (Bankr. C.D. Ill. July 13, 2011) ("To the extent child support arrearages are nondischargeable in Chapter 13, the arrearages continue to accrue interest as provided by state law. The post-petition interest is the liability of the debtor personally, not of the estate, is not subject to discharge in the case and is collectible thereafter. The *res judicata* effect of confirmation under section 1327(a) has no effect on a debtor's continuing liability for payment of the unmatured interest that accrues postpetition.").

Georgia courts have similarly found a creditor can seek interest on past due child support if the matter was not previously considered. *See* Dial v. Adkins, 265 Ga. App. 650, 651 (2004) ("Because the issue of interest on past due child support was not a matter put in issue and decided in the prior contempt proceeding, the doctrine of res judicata did not bar the

10

subsequent judgment for the amount of interest accrued under the statute."). Because bankruptcy law administers the claims as established by state law, the Court finds the result should be the same – that the fact the issue of interest on Mr. Moore's DSO claim was not a matter put in issue in the Debtor's prior bankruptcy case does not bar consideration of the issue in this case.

### d. Mr. Moore is Entitled to Interest at 7% Under Georgia Law

Georgia law provides all judgments in Georgia shall bear annual interest, O.C.G.A. § 7-4-12,[2] but specific rules regarding interest on domestic support obligations are set out in O.C.G.A. § 7-4-12.1. It provides:

> **(a)** All awards, court orders, decrees, or judgments rendered pursuant to Title 19 expressed in monetary amounts shall accrue interest at the rate of 7 percent per annum commencing 30 days from the date such award, court order, decree, or judgment is entered or an installment payment is due, as applicable. The court may modify the date on which interest shall begin to accrue. It shall not be necessary for the party to whom the child support is due to reduce any such award to judgment in order to recover such interest. The court shall have discretion in applying or waiving past due interest. In determining whether to apply, waive, or reduce the amount of interest owed, the court shall consider whether:

> > **(1)** Good cause existed for the nonpayment of the child support;

---

[2] The section provides:

> **(a)** All judgments in this state shall bear annual interest upon the principal amount recovered at a rate equal to the prime rate as published by the Board of Governors of the Federal Reserve System, as published in statistical release H. 15 or any publication that may supersede it, on the day the judgment is entered plus 3 percent.

> **(b)** If the judgment is rendered on a written contract or obligation providing for interest at a specified rate, the judgment shall bear interest at the rate specified in the contract or obligation.

> **(c)** The postjudgment interest provided for in this Code section shall apply automatically to all judgments in this state and the interest shall be collectable as a part of each judgment whether or not the judgment specifically reflects the entitlement to postjudgment interest.

> **(d)** This Code section shall apply to all civil actions filed on or after July 1, 2003.

**(2)** Payment of the interest would result in substantial and unreasonable hardship for the parent owing the interest;

**(3)** Applying, waiving, or reducing the interest would enhance or detract from the parent's current ability to pay child support, including the consideration of the regularity of payments made for current child support of those dependents for whom support is owed; and

**(4)** The waiver or reduction of interest would result in substantial and unreasonable hardship to the parent to whom interest is owed.

O.C.G.A. § 7-4-12.1.

O.C.G.A. § 7-4-12.1 became effective on July 1, 1996.  Prior to the adoption of O.C.G.A. § 7-4-12.1, the general provisions regarding statutory interest, O.C.G.A. § 7-4-12, did not apply to DSOs; rather, interest was within the trial court's discretion.  Reid v. Reid, 502 S.E.2d 269, 271 (Ga. App. 1998).  Under the new Georgia Code section, interest automatically accrues and a party has a vested right to the interest; it is no longer within the discretion of a trial judge to determine whether an award of interest is appropriate.  Id.  As originally enacted, O.C.G.A. § 7-4-12.1 only applied to awards of child support.  It was amended, effective April 2, 2015, to apply more broadly to "all awards, court orders, decrees, and judgments rendered pursuant to Title 19[.]"

Debtor argues this Court should exercise its discretion to waive the past due interest on Mr. Moore's claim.  She contends paying the interest would result in substantial and unreasonable hardship to her because she is a stay-at-home mother of a special needs child.

The Court recognizes that, under Georgia law, it has discretion in determining whether to apply, waive, or reduce the amount of interest owed.  The Court declines to exercise its discretion to waive or reduce the amount of interest owed here because the criteria set out in the statute have not been met.  Debtor has not provided any explanation for the nonpayment of child support, other than stating that she cannot afford to pay it.  That is not what the statute contemplates, and the Court finds this factor weighs against waiving or reducing the amount of interest owed.

Second, Debtor argues paying the interest would result in substantial and unreasonable hardship. The state court, which has had the opportunity to observe both parties through lengthy litigation, has not found that to be the case. The state court has never indicated the Debtor should be given any special dispensation when it comes to paying Mr. Moore. For example, the state court could have declined to award Mr. Moore attorney's fees and could have exercised its discretion to reduce the amount owed to him, but it did not. The Court has read all of the state court orders presented in this and the Debtor's prior case and does not find the Debtor to be entitled to any special relief. Accordingly, the Court finds the second factor weighs against waiving or reducing the amount of interest owed.

The third factor (applying, waiving, or reducing the interest would enhance or detract from the parent's current ability to pay child support, including the consideration of the regularity of payments made for current child support of those dependents for whom support is owed) is not applicable here. No ongoing child support is required of the Debtor since the children have reached the age of majority. The fourth factor (the waiver or reduction of interest would result in substantial and unreasonable hardship to the parent to whom interest is owed) does favor the Debtor as there is no evidence Mr. Moore would be placed in substantial and unreasonable hardship if he did not receive interest.

On balance, the Court finds, pursuant to Georgia law, Mr. Moore is entitled to 7% interest on his DSO claim and the Court will not exercise its discretion to modify the date on which interest began to accrue and will not waive or reduce the past due interest owed on his claim.

### e. Mr. Moore is Entitled to a Priority Claim for Attorney's Fees that Were Previously Awarded

The Court awarded Mr. Moore attorney's fees in Debtor's prior case. In the Order on Motion to Disallow Claim (Doc. No. 70.), entered on October 14, 2016 and reiterated in the

Order Allowing Modified Claim (Doc. No. 102), the Court found Mr. Moore had an allowed

priority unsecured claim consisting of attorney's fees in the amount of $15,571.50.

The doctrine of collateral estoppel prohibits re-litigation of issues already adjudicated by a

valid and final judgment of another court.  In Re Bilzerian, 100 F.3d 886, 892 (11th Cir. 1996).

The bankruptcy court applies the law of the court issuing the prior judgment.  St. Laurent, 991

F.2d at 675-76; In re Brownlee, 83 B.R. 836, 838 (Bankr. N.D. Ga. 1988); *see also* Restatement

(Second) of Judgments § 87 (1982).  The prior judgment in this case was issued by this Court, a

federal court, and therefore, federal law will determine whether collateral estoppel bars relitigation

of the priority of the attorney fees.   Under federal law, collateral estoppel applies when the

following elements are met: 1) the issue in the prior action and the issue in the bankruptcy court

are identical; 2) the issue was actually litigated in the prior action; 3) the determination of the issue

in the prior action was a critical and necessary part of the judgment in the litigation; and 4) the

burden of persuasion in the later proceeding is not significantly heavier than the burden of

persuasion in the initial action.  Bush v. Balfour (In re Bush), 62 F.3d 1319, 1322 (11th Cir. 1995).

There is an identity of issues between the two cases.  The Debtor and Mr. Moore are the

same parties that litigated issues relating to Mr. Moore's claim in Debtor's prior case.  They seek

to litigate the same issue, whether attorney's fees should be allowed as part of Mr. Moore's priority

unsecured DSO claim, in this case.

The question of whether attorney's fees should be allowed as part of Mr. Moore's claim

was actually and finally litigated in the Debtor's prior case and the parties had a full and fair

opportunity to litigate the issue.  In general, "when a question of fact is . . . submitted to the trier

of fact for its determination, and is determined, that question of fact has been actually litigated."

Williams, 282 B.R. at 272 (citing 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL

PRACTICE ¶ 132.03[2][c] (3d ed. 1999)).  Debtor does not contend that she did not receive notice

in her prior bankruptcy case, nor does she claim she was afforded less than a full right to participate

in the adjudication of Mr. Moore's proof of claim in that case.  In fact, Debtor was represented by

an attorney in her prior bankruptcy case, filed an objection to Mr. Moore's proof of claim and

responses to Mr. Moore's papers, and participated in a hearing on her objection to Mr. Moore's

claim.  The Court carefully reviewed the pleadings and the arguments of parties and determined

that attorney's fees were a part of Mr. Moore's unsecured priority claim (Doc. No. 70).  The Court

finds that the issue of attorney's fees was actually litigated in the prior case.

Further, determining attorney's fees were part of Mr. Moore's allowed priority claim was

a critical and necessary part of the Court's calculation in the Order on Motion to Disallow Claim

(Doc. No. 70.), entered in Debtor's prior case.  It was an important element of the Court's

determination and not a peripheral issue.

Finally, the burden of persuasion in this case is not significantly heavier than the burden of

persuasion in the initial action – it is the same.

The Court finds the issue in Debtor's prior case is identical to the issue in this case, the

question of attorney's fees was actually and finally litigated in the prior case, the adjudication was

essential to the earlier action, and the burden of persuasion is the same in this case as in the

Debtor's prior case and, accordingly, its prior determination should be given preclusive effect.

Additionally, the allowance or disallowance of "a claim in bankruptcy is binding and

conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a

basis for a plea of res judicata." Siegel v. Fed. Home Loan Mortg. Corp., 143 F.3d 525, 529 (9th

Cir. 1998) (citing U.S. v. Coast Wineries, 131 F.2d 643, 648 (9th Cir.1942)).  "[T]he allowance or

disallowance of a claim in bankruptcy should be given like effect as any other judgment of a

competent court, in a subsequent suit against the bankrupt or any one in privity with him.'" <u>Bank of Lafayette v. Baudoin (In re Baudoin)</u>, 981 F.2d 736, 742 (5th Cir.1993) (finding that a bankruptcy order allowing a proof of claim is a final judgment to be given res judicata effect).  For these reasons, the Court concludes attorney's fees awarded to Mr. Moore are allowed as part of his DSO claim.

### f.    Additional Fees Included in Mr. Moore's Proof of Claim are Disallowed

Mr. Moore seeks to recover $175 for litigation expenses.  These expenses were already included in the 2015 Douglas County order that awarded Mr. Moore $15,571.50 in attorney's fees and costs.  Mr. Moore also seeks to recover $322 for costs incurred in the proceedings he initiated after the Debtor's prior bankruptcy case was dismissed.  He contends the state court awarded him these fees in the order it issued on January 18, 2019.  The order, however, did not award Mr. Moore these costs and it could not have because Debtor had already refiled bankruptcy and had a pending bankruptcy case.  The state court order merely observed that Mr. Moore may have incurred court costs.  Accordingly, the Court finds Mr. Moore may not include these fees in his proof of claim.

### g.    Amount of Claim and Payment Under the Plan

The parties filed a Joint Stipulation calculating Mr. Moore's pre-petition claim to be $22,104.00 (Doc. No. 54), but the stipulation did not differentiate between principal and interest.  The Court asked the parties to stipulate to the amount of principal and the amount of interest, but they were unable to do so.  Instead, they filed competing calculations, but neither comply with Georgia law.

Under Georgia law, payments of debts including judgments are applied first to interest and then to principal.  O.C.G.A. § 7-4-17; <u>Threat v. Forsyth County</u>, 262 Ga. App. 186 (2003). Moreover, interest does not accrue on interest, but only on principal (with few exceptions not

applicable here).  O.C.G.A. §§ 7-4-17; 9-12-10.  The Debtor's calculation accrued interest on the original balance without an adjustment for payments made.  Mr. Moore similarly did not adjust the calculation of interest each time a payment was made but made yearly adjustments.  Neither party applied the payments to interest first.  The Court has therefore calculated Mr. Moore's claim as set out in Exhibit A.  Each payment made by the Debtor was applied to interest first then to principal, and the interest accrual was adjusted with each payment.  The Court determines Mr. Moore holds a claim of $22,192.01 consisting of unpaid pre-petition principal of $21,522.36 and unpaid pre-petition interest of $669.65.  The Debtor's payments under the plan shall be applied first to the post-petition interest accruing on Mr. Moore's principal claim of $21,522.36, second to the pre-petition interest accrued of $669.65, and last to the pre-petition principal of the claim in the amount of $21,522.36.

### III.    CONCLUSION

For the reasons stated above,

**IT IS ORDERED** the Objection is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Mr. Moore is entitled to both pre- and post-petition interest on his DSO claim at 7%.

**IT IS FURTHER ORDERED** that Mr. Moore is entitled to a priority claim for attorney's fees that were previously awarded.

**IT IS FURTHER ORDERED** that Mr. Moore may not include $175 for litigation expenses and $322 for costs in his proof of claim.

**IT IS FURTHER ORDERED** that Debtor is directed to file an amended chapter 13 plan within fourteen (14) days of the entry of this Order to treat Mr. Moore's allowed pre-petition claim. The Chapter 13 Trustee is directed to re-notice confirmation thirty days after the plan is filed.

17

**IT IS FURTHER ORDERED** that Debtor's payments under the plan shall be applied first to the post-petition interest accruing on Mr. Moore's principal claim of $21,522.36, second to the pre-petition interest accrued of $669.65, and last to the pre-petition principal of the claim in the amount of $21,522.36.

<u>END OF DOCUMENT</u>

**Distribution List**

Janeene Hope Vickers Moore-McKinney
2827 E County Line Rd
Lithia Springs, GA 30122-2720

David J. Casey, Esq
PO Box 813102
Smyrna, GA 30081

Nancy J. Whaley
Chapter 13 Trustee 303 Peachtree Center
Avenue, Suite 120 Atlanta, GA 30303

Anthony B. Moore
4559 Derby Loop
Fairburn, GA 30213

**Moore-McKinney Balance Calculation**

| Date | Payment Amount | Principal | Interest Accrual | Interest Period |
|------|----------------|-----------|------------------|-----------------|
| 2/24/2015 | $0 | $19,206.08 | $0 | N/A |
| 03/2015 | $115 | $19,206.08 ($115.00) | $0 | N/A[1] |
| 4/2015 | $120 | $19,091.08 ($8.63) | $111.37 ($111.37) | 3/24/2015-4/24/2015 |
| 05/2015 | $0 | $19,082.45 | $111.31 | 4/24/2015-5/24/2015 |
| 6/2015 | $148.50 | $19,082.45 | $111.31 ($148.50) | 5/24/2015-6/24/2015 |
| 7/2015 | $247 | $19,082.45 ($61.57) | $111.31 ($185.43) | 6/24/2015-7/24/2015 |
| 8/2015 | $144.34 | $19,020.88 ($33.38) | $110.96 ($110.96) | 7/24/2015-8/24/2015 |
| 9/2015 | $0 | $18,987.50 | $110.76 | 8/24/2015-9/24/2015 |
| 10/2015 | $144.34 | $18,987.50 | $110.76 ($144.34) | 9/24/2015-10/24/2015 |
| 11/2015 | $148.50 | $18,987.50 | $110.76 ($148.50) | 10/24/2015-11/24/2015 |
| 11/2015 | $146.42 | $18,987.50 ($106.98) | ($39.44) | |
| 12/2015 | $0 | $18,880.52 | $110.14 | 11/24/2015-12/24/2015 |
| 1/2016 | $144.34 | $18,880.52 | $110.14 ($144.34) | 12/24/2015-1/24/2016 |
| 2/2016 | $0 | $18,880.52 | $110.14 | 1/24/2016-2/24/2016 |
| 3/2016 | $150 | $18,880.52 | $110.14 ($150.00) | 2/24/2016-3/24/2016 |
| 4/2016 | $0 | $18,880.52 | $110.14 | 3/24/2016-4/24/2016 |
| 5/2016 | $0 | $18,880.52 | $110.14 | 4/24/2016-5/24/2016 |
| 6/2016 | $0 | $18,880.52 | $110.14 | 5/24/2016-6/24/2016 |
| 7/2016 | $0 | $18,880.52 | $110.14 | 6/24/2016-7/24/2016 |
| 8/2016 | $0 | $18,880.52 | $110.14 | 7/24/2016-8/24/2016 |

---

[1] Interest began accruing 30 days after entry of judgment.

**EXHIBIT A**
Page **1** of 3

**Moore-McKinney Balance Calculation**

| Date | Payment Amount | Principal | Interest Accrual | Interest Period |
|------|---------------|-----------|------------------|-----------------|
| 9/2016 | $0 | $18,880.52 | $110.14 | 8/24/2016-9/24/2016 |
| 10/2016 | $0 | $18,880.52 | $110.14 | 9/24/2016-10/24/2016 |
| 11/1/2016 | $500 | $18,880.52 | $110.14 ($500.00) | 10/24/2016-11/24/2016 |
| 12/1/2016 | $0 | $18,880.52 | $132.16 | 11/24/2016-1/1/2017 |
| 1/3/2017 | $578.52 | $18,880.52 | ($578.52) $110.14 | 1/1/2017-2/1/2017 |
| 2/1/2017 | $219.62 | $18,880.52 ($28.50) | ($191.12) $109.97 | 2/1/2017-3/1/2017 |
| 3/1/2017 | $219.62 | $18,852.02 ($109.65) | ($109.97) $109.33 | 3/1/2017-4/1/2017 |
| 4/3/2017 | $219.62 | $18,742.37 ($110.29) | ($109.33) $108.69 | 4/1/2017-5/1/2017 |
| 5/1/2017 | $219.62 | $18,632.08 ($110.93) | ($108.69) $108.04 | 5/1/2017-6/1/2017 |
| 6/1/2017 | $0 | $18,521.15 | $108.04 | 6/1/2017-7/1/2017 |
| 7/1/2017 | $439.24 | $18,521.15 ($223.16) | ($216.08) $106.74 | 7/1/2017-8/1/2017 |
| 8/1/2017 | $219.62 | $18,297.99 ($112.88) | ($106.74) $106.08 | 8/1/2017-9/1/2017 |
| 9/1/2017 | $219.62 | $18,185.11 ($113.54) | ($106.08) $105.42 | 9/1/2017-10/1/2017 |
| 10/2/2017 | $219.62 | $18,071.57 ($114.20) | ($105.42) $104.75 | 10/1/2017-11/1/2017 |
| 11/1/2017 | $220.75 | $17,957.37 ($116.00) | ($104.75) $104.07 | 11/1/2017-12/1/2017 |
| 12/1/2017 | $352.89 | $17,841.37 ($248.82) | ($104.07) $102.62 | 12/1/2017-1/1/2018 |
| 1/1/2018 | $0 | $17,592.55 | $102.62 | 1/1/2018-2/1/2018 |
| 2/1/2018 | $420.75 | $17,592.55 ($215.51) | ($205.24) $101.37 | 2/1/2018-3/1/2018 |

**EXHIBIT A**
Page **2** of **3**

**Moore-McKinney Balance Calculation**

| Date | Payment Amount | Principal | Interest Accrual | Interest Period |
|---|---|---|---|---|
| 3/1/2018 | $420.75 | $17,377.04 ($319.38) | ($101.37) $99.50 | 3/1/2018-4/1/2018 |
| 4/2/2018 | $420.75 | $17,057.66 ($321.25) | ($99.50) $97.62 | 4/1/2018-5/1/2018 |
| 5/1/2018 | $841.50 | $16,736.41 ($743.88) | ($97.62) $93.29 | 5/1/2018-6/1/2018 |
| 5/17/2018 | $6,461.97 *Additional Judgment* | | | |
| 6/1/2018 | $420.75 | $15,992.53 ($327.46) | ($93.29) | |
| | $0 | $15,665.07 | $51.85 | 6/1/2018-6/17/2018[2] |
| 6/17/2018 | $0 | +$6,461.97 $22,127.04 | $184.97 | 6/17/2018-8/1/2018 |
| 8/1/2018 | $841.50 | $22,127.04 ($604.68) | ($236.82) | |
| | $0 | $21,522.36 | $125.55 | 8/1/2018-9/1/2018 |
| | $0 | $21,522.36 | $125.55 | 9/1/2018-10/1/2018 |
| | $0 | $21,522.36 | $125.55 | 10/1/2018-11/1/2018 |
| | $0 | $21,522.36 | $125.55 | 11/1/2018-12/1/2018 |
| | $0 | $21,522.36 | $125.55 | 12/1/2018-1/1/2019 |
| | $0 | $21,522.36 | $41.90 | 1/1/2019-1/11/2019[3] |
| | | | | |
| **BALANCE** | | **$21,522.36** | **$669.65** | |

**TOTAL CLAIM:**      $22,192.01

---

[2] Interest calculated on original balance since interest does not begin to accrue on additional judgment until 30 days after entry.
[3] Calculation ends at petition date.

**EXHIBIT A**
Page **3** of **3**